Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence affirms in part and reverses in part the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 * * * * * * * * * * *
At the hearing before the Deputy Commissioner the parties stipulated to the following, which the Full Commission finds as fact and concludes as matters of law as:
 STIPULATIONS
1. The accident that is the subject of this claim occurred on 19 August 1996.
2. Plaintiff's average weekly wage was $350.00, which yields a compensation rate of $233.33.
3. As a result of her accident, plaintiff sustained multiple injuries. Her primary injuries were to her left knee and spine.
4. Defendant has paid temporary total disability compensation from 19 August 1996, through the date of the hearing.
5. A set of plaintiff's medical records marked as Stipulated Exhibit Number Two are admitted into evidence.
6. Two pages of plaintiff's medical records from Dr. Rosado received from plaintiff's counsel on October 20, 1998 are admitted into evidence.
 * * * * * * * * * * *
Based upon the competent evidence of record, the Full Commission finds as fact and concludes as matters of law the following:
 FINDINGS OF FACT
1. Plaintiff is a female born on 12 April 1960 who resides in Salisbury, North Carolina, and is a certified nursing assistant. She had been employed by the defendant in that capacity. Plaintiff's job required her to travel to homes of patients of defendant and render nursing services. On 19 August 1996, plaintiff was traveling to the home of a patient when she was rear-ended by another party, resulting in injuries to plaintiff's back, knee and other parts of her body.
2. Plaintiff sustained a fracture to the thoracic spine at T12 and a tear of her left knee meniscus. Plaintiff was hospitalized for these injuries and treated for the fracture of her thoracic spine by Dr. Mark Lyerly. She was discharged on 25 August 1996, in a body cast from her neck to below her hips. She required attendant care from 19 August 1996 to 18 September 1996.
3. Defendant delayed six weeks before accepting the claim. The failure to promptly pay weekly temporary total disability caused plaintiff emotional distress. Due in part to the stress that was placed on plaintiff and her family, plaintiff's husband abandoned plaintiff and their two minor children following the accident. Plaintiff was the sole means of support for her two minor children and had no other source of income following the accident. Plaintiff's attendant care was provided by plaintiff's mother. Because of the stress plaintiff was under, Dr. Lyerly observed that she was in need of psychiatric treatment and prescribed Prozac and Ambien. Subsequently, Dr. Lyerly referred the plaintiff to psychiatrist Dr. Victor Rosado for treatment of the depression, chronic pain and stress brought on by her injuries and her stress over financial concerns.
4. The doctor-patient relationship between plaintiff and Dr. Mark Lyerly ceased on 17 December 1996. At this time, plaintiff was not at maximum medical improvement but continued to be treated by Dr. Victor Rosado and by orthopedic surgeon Dr. James L. Comadoll for her left knee injury.
5. Dr. Comadoll scheduled an MRI of plaintiff's left knee and thoracic spine on 7 November 1996. The MRI showed a tear involving the lateral meniscus of the left knee. The MRI of the thoracic spine showed a superior end-plate compression fracture at T12 with some posterior extension, a disc herniation at T11-12 with some indentation upon the spinal canal and cord of approximately 25-30%. Dr. Comadoll performed an arthroscopy of the left knee on 8 May 1997.
6. On 27 February 1997, Dr. Victor Rosado diagnosed plaintiff with depression resulting in difficulty sleeping, decreased concentration, crying spells, and chronic pain. He prescribed supportive therapy with medication management. Dr. Rosado stated his prognosis was guarded at that time and that her psychiatric problems would preclude her from employment. Defendant denied any treatment for plaintiff's psychiatric problems.
7. During Summer and Fall 1997, Dr. Comadoll prescribed physical therapy for plaintiff's left knee. Plaintiff received her therapy at Stewart Physical Therapy and Sports Medicine Clinic in Salisbury. Plaintiff began to complain of lower back pain during exercises on 5 August 1997. The physical therapist at Stewart Physical Therapy noted plaintiff's increasing complaints of pain to the back on 13 and 14 August 1997, and 12 September 1997 during resistant walking activities, stair stepping and leg presses among others. In spite of plaintiff's complaints of pain, Stewart Physical Therapy continued with the regimen to increase the strength of her knee. On 17 November 1997, plaintiff's therapist noted that plaintiff continued to complain of pain in her low back with radiating pain into the left lower extremity. Plaintiff reported increased pain to Dr. Comadoll on this occasion, who recommended that she present to an emergency room for relief. Plaintiff saw a number of doctors concerning her lower back pain without relief. Dr. Comadoll referred her for an epidural block on 4 December 1997. When requested, defendant refused to approve any treatment for plaintiff's lower back pain complaints.
8. Because of increasing severity of the pain to her lower back, plaintiff sought treatment on her own from Dr. Raymond Sweet, a neurosurgeon. Plaintiff gave a history of severe back pain and down the left leg which had been continuous since physical therapy for her knee injury in September 1997. Dr. Sweet obtained an MRI of the lower back and came to the conclusion that the plaintiff had ruptured a disc between L5-S1 on the left side and that most likely this had occurred during her physical therapy for her knee injury in September 1997. Dr. Sweet recommended that plaintiff have a microdiskectomy at L5-S1 on the left. Dr. Sweet was of the opinion that plaintiff's complaint of severe pain which prevented her from being able to ambulate without severe pain was consistent with the disc that he observed when he did the microdiskectomy in February 1998. Approval for this medical treatment was denied by defendant and plaintiff resorted to her group health medical coverage to pay for the surgery.
9. Plaintiff obtained excellent results from her lower back surgery by Dr. Sweet.
10. Plaintiff has reached maximum medical improvement as to her fracture of the thoracic spine, left knee injury and ruptured disc of the L5-S1 of the lower back. Plaintiff will require medication approximately every three months for her chronic pain and she will be limited to sedentary office work for the foreseeable future. Dr. Sweet testified that plaintiff cannot return to full-time gainful employment as a certified nursing assistant. Dr. Sweet gave plaintiff a 10% permanent partial disability to the back based on the L5-S1 disc problem alone. Plaintiff will need to see a physician every three months to renew her pain medication.
11. Dr. Comadoll found that plaintiff was at maximum medical improvement solely as to her left knee on 23 December 1997, and gave plaintiff a 5% permanent partial disability secondary to the meniscal tear.
12. Plaintiff's depression and other psychiatric problems are a direct result of her compensable accident of 19 August 1996, due to her pain from her numerous injuries as well as the stress she suffers from her financial problems. Plaintiff needs continuing psychiatric treatment, counseling and medication, and continues to be unable to perform any type of gainful employment or participate in vocational rehabilitation at this time. Dr. Rosado has recommended that psychological tests be carried out by Dr. John Reedy, a psychologist.
13. There was sufficient medical evidence to support defendant's decision to defend plaintiff's claim for additional medical treatment for her spine; therefore, the defense was not based on unfounded litigiousness.
 * * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 19 August 1996, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant. N.C. Gen. Stat. § 97-2(6).
2. As a result of her injury, plaintiff is entitled to continuing payment of temporary total disability compensation at the rate of $233.33 per week until order of the Industrial Commission allowing cessation of temporary disability compensation. N.C. Gen. Stat. § 97-29.
3. Plaintiff's psychiatric problems including depression are a direct result of her injury sustained in her compensable accident of 19 August 1996. Plaintiff's treatment for her psychiatric problems was and continues to be reasonably necessary to effect a cure, to provide relief and to lessen her period of disability.
4. Plaintiff is entitled to payment of all medical expenses incurred as a result of the injuries sustained on 19 August 1996, including expenses incurred for treatment rendered by Dr. Raymond Sweet and Dr. Victor Rosado. N.C. Gen. Stat. § 97-25.1.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall continue paying plaintiff temporary total disability compensation at the rate of $233.33 per week until order of the Industrial Commission allowing cessation of temporary total disability compensation, subject to attorney's fees as discussed below.
2. Defendant shall pay all medical expenses incurred by plaintiff as a result of the injuries sustained on 19 August 1996, including expenses incurred for treatment by Dr. Raymond Sweet and Dr. Victor Rosado, including examinations, evaluations and treatment which may reasonably be required to effect a cure, give relief or will tend to lessen plaintiff's period of disability, when bills for the same have been submitted to the defendant and approved through procedures established by the Industrial Commission.
3. A reasonable attorney's fee of 25% is approved for plaintiff's counsel. Every fourth weekly compensation check shall be paid directly to plaintiff's counsel.
4. Defendant shall pay the costs due this Commission.
This the _______ day of March, 2000.
 S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _____________ THOMAS J. BOLCH COMMISSIONER
(Retired prior to decision)
J. HOWARD BUNN, JR., CHAIRMAN